CASE 24—SUIT BY WILLIAM GILFILLEN, SR. AND OTHERS AGAINST
SALT LICK, E. & MT. C. TURNPIKE ROAD COMPANY TO ENJOIN
COLLECTION OF A TAX.—JAN. 6.

# Salt Lick E. & Mt. C. Turnpike Road Co. v. Gilfillen, &c.

APPEAL FROM LEWIS CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS   AFFIRMED.

TURNPIKE ROADS—TAXES TO AID IN CONSTRUCTION—STATUTES.

Held:   1. Act March 9, 1867 (2 Acts, 1867, p. 539, c. 2035), incor-
porating a turnpike company, empowers it to construct a toll
road in L. county; requires the county, when $5,000 is sub-
scribed by the corporators, to subscribe $1,000 for each mile
of road built; creates a taxing district within which a one per
cent. tax is required to be levied; and provides that the tax
shall be levied and collected to assist in building the road, and
shall be collected till the road is completed for fifteen miles. HELD,
that the tax is only to "assist" in "building" the road; that its
maximum amount can not exceed the cost of building, less the
solvent private subscriptions of $5,000 and the county aid; and
can not be increased by losses after the road is built, or dam-
age to any part after its completion, or by cost of management,
or in the case of any taxpayer by mere failure to collect taxes
from delinquents.

ALLAN B. COLE, FOR APPELLANT.

1. Our contention is, that an amendment to an act of the Leg-
islature passed in 1867 which authorizes a tax of fifty cents on
each $100 worth of land in a certain specified district in a county,
is not in violation of section 51 of the Constitution, which de-
clares that no law enacted by the General Assembly shall re-
late to more than one subject and that shall be expressed in the
title.

2. If a doubt exists, it is the duty of the court to resolve
that doubt in favor of the constitutionality of the law.

3. But even if the act in question were unconstitutional, it is

well settled as a general proposition, subject to certain exceptions, not necessary to be here noted, that where a party has availed himself, for his benefit, of an unconstitutional law, he can not, in subsequent litigation with others, not in that position, aver its unconstitutionality as a defense, although its unconstitutionality may have been pronounced by a competent judicial tribunal.

### AUTHORITIES CITED.

Daniels v. Tearning, 102 U. S., 421; Ferguson v. Landrum, 5 Bush, 230; Trustee' School Dist. v. City Flemingsburg, 97 Ky., 706; Ogden v. Sanders, 12 Wheat., (U. S.), 213; C. & O. R. R. Co. v. Barren County Court, 10 Bush, 613; Bierley v. Tucks Run & Ohio River T. P. R. Co., 17 R., 36; Phillips v. Cov. & Cin. Bridge Co., 2 Met., 221; New York Life Ins. Co. v. Weaver's Admr., 70 S. W., 628; A. & E. Ency. of Law, (1st ed.), vol 23, p. 235; Continental Imp. Co. v. Phelps, 47 Mich, 299; Cooley Con. Lim., 96 ed., 81; Stuart v. Laed, 1 Cranch, (U. S.), 299; Detroit City Ry. Co. v. Mills, 85 Mich., 646; Martin v. Hunter, 1 Wheat., (U. S.), 351; Cohens v. Virginia, 6 Wheat., (U. S.), 246; Bank U. S. v. Halstead, 10 Wheat. U. S., 51; Westinghausen v. People, 44 Mich., 265; People v. Hammond, 13 Mich, 256; Frey v. Michael, 68, Mich., 323; People v. Goodwin, 22 Mich., 500.

W. C. HALBERT AND E. L. WORTHINGTON, FOR APPELLEES.

### POINTS MADE AND AUTHORITIES CITED BY APPELLEES.

The act of the Legislature of March 5, 1867, and the act purporting to amend same of December 18, 1867, were each unconstitutional and void, being in conflict with section 37 of article 2 of the Constitution of 1850, then in force.

The act of March 5, 1867, does not indicate by its title the subject of the legislation enacted in the body of the act.

And the amendment to that act of December 18, 1867, does note show nor in any manner disclose in its title the subject matter contained in the act, and the amendment applies to two separate and distinct subjects and attempts to enact legislation for two distinct private corporations. Constitution of 1850, article 2, sec. 37; Acts of 1867, vol. 2, p. 539, approved March 9, 1867; Act of 1867, vol. 2, p. 280, approved March 5, 1867; Acts of 1867-8, vol. 1, p. 120, approved December 18, 1867; Acts of 1867, vol. 1, p. 363, approved Feb. 13, 1867; The People v. Mahaney, 13 Mich., 494; The People v. Denahy, 20

Mich., 349; Sutherland on Stat. Con., sec. 78; Chiles & Thomas v. Monroe, 4 Met., 65; O'Donoghue v. Akin, 2 Duvall, 478; Pennington v. Woolfolk, &c., 79 Ky., 14; Dalese v. Pierce, 124 Ill., 140; Philadelphia v. Ridge Ave. Ry. Co., 142 Pa. St., 484, 24 Am. St. Rep., 512; *In re* Blodgett, 89 N. Y., 392; Trumble v. Trumble, 37 Neb., 340; Adams v. San Angelo, etc. Co., 86 Tex., 485.

There is in this case neither allegation nor proof that the appellees or any of them procured or helped to procure or knew of the passage of the legislation for appellant's benefit questioned in this action, or that they derived any peculiar benefits from such legislation other than those shared or enjoyed by all the residents or property owners of the taxing district, and in the absence of such proof and allegation the cases cited by appellant tending to show an estoppel are not in point.

It has been well and frequently decided by our court that a benefit derived by a party, in common with other inhabitants of a town or city, from general improvements of roads, streets, wharves, etc., and a consequent increase of business to such town or city, is not such a consideration as will estop him from recovering from the authorities of the city, money that he has ignorantly paid upon an illegal or unauthorized assessment of taxes. City of Covington v. Powell, 2 Met., 226.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

Appellant turnpike company was incorporated by an act of Legislature, approved March 9, 1867. 2 Acts, 1867, p. 539, c. 2035. It was empowered to construct a macadam toll road in Lewis county, this State. So soon as $5,000 should be subscribed by the corporators, the company was authorized to organize, to condemn right of way where necessary, and the county of Lewis was required to subscribe and deliver its bonds to the amount of $1,000 per mile for each mile of road built by the company, in addition to $1,000 for a bridge over Salt Lick creek. A taxing district was created, within which there was required to be levied an ad valorem tax of $1 on the $100 of taxable property in the territory constituting the district. The provision of

the act on this point reads: "The said tax shall be levied and collected for the purpose of assisting in building said road; and the taxpayers shall be stockholders in said company to the extent that they pay taxes under this act; said tax to be collected until said road is completed fifteen miles of its distance from Vanceburg." 2 Acts 1867, p. 280, c. 1708.

The first mile of the road was built by the company in 1871, for which it received the bond of Lewis county, for $1,000. The bridge was built about 1873. The county issued to the company a $1,000 bond for that. Work on the road seems to have been abandoned then till about 1892, when the corporation, electing new officers, resumed the project of building the road. It let the contract for the remaining five miles of road. The work was completed.

It is admitted that Lewis county issued to the company and that it received the bonds of the county to the amount of $1,000 for each mile of the road. Beginning in 1892, and continuing each year till 1898, inclusive, there was levied on the taxable property in the taxing district the special tax of $1 on the $100, which was listed with the sheriff for collection. The assessed valuation of the district was about $54,000 per year on an average. The same rate of tax was also assessed for the years 1870, 1871, 1872, 1873 and 1874. In 1899 this suit was brought by appellees, sixty-two of the taxpayers of the district, to enjoin the collection of the tax for that year and further years on the ground that the purpose for which the tax had been authorized had been fulfilled, and furthermore, they alleged that the acts under which it was levied were unconstitutional for various reasons.

The last-named feature of the case we will not discuss, having found a controlling reason in the facts shown by the

record for affirming the circuit court's judgment granting a perpetual injunction against the further collection of the tax.

The record discloses that the first mile and a half (including the bridge) originally constructed cost not exceeding $2,800, of which Lewis county paid $2,000. What sum was collected from the taxpayers of the district under the assessments from 1870 to 1874 is not shown. The remaining five miles, built subsequent to 1892, cost, contract price, according to appellees' version, $7,615; and according to appellant about $8,200. Of this sum it is admitted the county paid $5,000 in her bonds, as has been stated. The tax assessed against the district would not be less than $470 net per annum, realizing, in the seven years not in dispute, $3,290. So that it appears that the taxpayers and the county have paid in fully enough or more than enough, to discharge the total cost of construction. It is claimed that some of the taxpayers did not pay for certain years— were delinquent—and that in consequence the company did not get all that was due to it on that score. It is also claimed that owing to the lack of repair the first mile and a half of road became almost worthless, and had to be rebuilt. Counsel for appellant observe here: "If the company had at the start pushed the work to completion, the amount originally expended would not have been thrown away. This is the whole trouble in this case." The company's present indebtedness is alleged to be about $2,700.

The taxpayers of the taxing district, who became stockholders upon the payment of their taxes, became in a sense involuntary subscribers to the stock of the company. Like other stockholders, their liability was only to the extent of their subscription. Each one was liable only for his own, not for default of others. By the terms of the

act they were to pay only so much as was required in "assisting to build the road"—not to operate it, nor to keep it in repair. When they had paid a sum sufficient to build it, their liability was at an end, notwithstanding the company might have become insolvent through bad management. The tax levied was a lien, as other taxes against the land in the district, collectible by distraint. If the company failed to collect any one's taxes, it must be presumed, in the absence of showing to the contrary, in view of the lien and means of collection, that it voluntarily failed to do so, or by neglect failed. In either event it will not be permitted to collect the amount from other taxpayers not in default.

As to the first mile and a half, it will be conclusively presumed against the corporation, claiming a right to exercise the extraordinary function of taxation in its behalf, that it had subscribed in good faith the minimum amount of capital stock which authorized it to become a corporation, with the right to enjoy the extremely liberal provisions of the act in its behalf. At least it will not be heard, in the suit of the taxpayers, to say that it failed to perform a condition precedent to its right to collect taxes at all in its aid, yet insist on the payment of such taxes. Therefore, the court must assume that the $5,000 of stock required before the company could be organized was subscribed. This sum, the $2,000 paid by Lewis county, and the taxes collected during the early seventies would more than pay for the building of that first mile and a half of road. The taxpayers were required only to assist in building the road. Therefore, the private subscription that was solvent, and the county aid above alluded to, must be taken into account in measuring the maximum liability of the taxpaying stockholders. This done, we find that they have

fully discharged that liability, so far as complainants and others similarly situated are concerned, and their liability can not be enhanced either by losses incurred after the road was built, or damage to any part after its completion; nor to cost of management; nor to a mere failure to collect taxes from delinquents.

Wherefore the judgment is affirmed.